THE PEOPLE *ex rel.* John J. Healy, State's Attorney, *vs.*
JOHN KNEFEL.

*Opinion filed February 20, 1908—Rehearing denied April 8, 1908.*

ATTORNEYS AT LAW—*what conduct ground for disbarment.* An
attorney at law who fraudulently misrepresents to his client the
amount he had paid for property at a partition sale which the at-
torney attended as his client's representative for the purpose of
buying in the property, thereby obtaining for his own use money
not needed to satisfy the amount of his bid, is guilty of unprofes-
sional conduct and should be disbarred.

INFORMATION for disbarment.

JOHN L. FOGLE, for relator.

LEVI SPRAGUE, for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

On June 15, 1893, John Knefel, the respondent, was
admitted to practice as an attorney at law, a license was
issued to him and his name was entered on the roll of at-
torneys of this court. After his admission to the bar he
had a limited practice as an attorney, although his principal
business was insurance, real estate, loans and collections.
His office was in Chicago, in the building of Dr. Louis H.
Clusman, a dentist. On December 20, 1906, by leave of
court, an information was filed in the name of the People,
on the relation of John J. Healy, State's attorney of Cook
county, and at the instance of the grievance committee of
the Chicago Bar Association, charging that the respondent,
while acting as attorney for Clusman, attended a sale made
by a master in chancery in a partition suit in Chicago and
bid off the property sold at $2700 in the name of Robert
Schrumpf but for and on behalf of Clusman, and afterward
falsely and fraudulently represented to Clusman that he had

paid $3500 for the property; that respondent fraudulently converted to his own use a note and sum of money delivered to him by Clusman in excess of the price actually paid for the lot, and that criminal proceedings for embezzlement were begun against respondent before a justice of the peace in the city of Chicago on account of said transaction, which proceedings were settled by respondent paying to Clusman $600, whereupon the criminal proceedings were dismissed. The information prayed that the name of the respondent should be stricken from the roll of attorneys of this court. Respondent was ruled to answer the information, and by his answer denied that he was acting for Clusman at the sale and averred that he bought the property on his own account, and after the purchase Clusman agreed to pay him $3500 for it. The issues were referred to George Mills Rogers, one of the masters in chancery of the circuit court of Cook county, with directions to take the evidence and report his conclusions of fact and law. The master took the evidence and made his report with conclusions, as directed. The facts found by the master sustained the charge of the information, and he concluded, as a matter of law, that the conduct of the respondent was sufficient ground for his disbarment. To that report the respondent filed exceptions, which were argued by counsel for the respective parties and the cause was submitted for decision.

There is no material disagreement concerning the following facts which appear from the evidence: Dr. Clusman owned some pieces of real estate in Chicago, and employed the respondent, as a real estate agent, for insuring the same, the collection of rent, payment of taxes and other matters connected with the property. Respondent also acted, in connection with another attorney, as the representative of Clusman in a legal proceeding in the spring of 1905. In the early summer of that year Clusman was desirous of purchasing a lot known as No. 355 Blue Island avenue, in Chicago, and offered Mr. Donnelly, the supposed owner of the

property, $2500 for it, but the offer was refused. Clusman
then saw a man named Maharas and requested him to see
Donnelly and try to purchase the property, but Maharas, in-
stead of making an offer for Clusman, entered into a written
contract with Donnelly for the purchase of the lot himself
for $2550. It was discovered that Donnelly did not have a
clear title and that a partition suit would be necessary, from
the fact that there were minors having an interest in the
lot. The respondent informed Clusman of the condition of
the title and of the contract which had been made by Ma-
haras. The partition suit was begun in the circuit court
of Cook county by Donnelly, who was represented by the
respondent and another attorney as his solicitors. The con-
tract between Donnelly and Maharas was canceled by mu-
tual consent. When the property was to be appraised in
the suit, respondent asked Clusman to act as one of the com-
missioners, and he did so. The premises were appraised
at $2700, and a decree for sale was entered on July 8, 1905,
directing James J. Gray, a master in chancery of the circuit
court, to make the sale. The premises were advertised in
pursuance of the decree and were sold on July 26, 1905.
The respondent attended the sale and bid for the premises
$2700, which was the only bid and was the amount of the
appraisement. The premises were struck off on his bid for
that amount, but to whom they were struck off is in dis-
pute. The master received from respondent the purchase
price, or it was accounted for by receipts from the parties
entitled to the proceeds, and the master executed a deed
dated July 31, 1905, to Robert Schrumpf as the purchaser.
The deed was dated July 31, 1905, and was acknowledged
on that day and recorded on August 11, 1905. A deed was
drawn by respondent from Robert Schrumpf to Mary Clus-
man, the wife of Dr. Clusman, dated the day of the sale,
with a consideration of $4000, and it purported to have
been signed and acknowledged on that day by Schrumpf
before respondent, as notary public, and it was recorded on

January 30, 1906. In February, 1906, Clusman claimed that he had discovered, by seeing an abstract of title, that the property had been sold for $2700, and he then made a demand on the respondent for the note of $750 and a coupon attached to the note, and also for $250, which represented the difference between $3500 and the amount for which the property was actually sold. Clusman employed an attorney and criminal proceedings were begun before a justice of the peace, and complaint was made to the Chicago Bar Association charging the respondent with unprofessional conduct. On April 4, 1906, respondent began a suit for $1000 against Clusman in the county court of Cook county, and on July 17, 1906, a forcible detainer suit was begun in the name of Mary Clusman against respondent for the possession of the office occupied by him. After some hearing before the justice of the peace in the criminal proceedings there were negotiations between the parties and their attorneys which resulted in a settlement, and the suit in the county court and the criminal proceedings were dismissed and respondent paid Clusman $600. It was understood that everything was settled and adjusted between the parties except the forcible detainer suit, but it was stated at the time that Clusman and his attorney could not control the proceeding before the committee of the bar association.

The controverted question of fact is whether the respondent was acting at the sale for and in behalf of Clusman, as his attorney, or whether he was acting for himself and owed no duty to Clusman. The evidence for the relator was to the effect that Clusman wanted to buy the property and respondent professed to act for him for the purpose of securing it; that Clusman told respondent he would be willing to pay $3500 for the property, if necessary; that respondent informed Clusman that an interested party would bid the property up to $3500; that respondent advised Clusman not to attend the sale, for the reason that

if he appeared personally the property would be run up higher than it otherwise would be; that respondent agreed to represent Clusman at the sale and purchase the property, but was not to bid more than $3500; that respondent was to have, in addition to what he would get in the partition proceeding, a real estate commission on the amount of the sale; that he directed Clusman to provide the necessary funds for the purchase; that Clusman borrowed $500 from Dr. Sterl on the morning of the day of the sale and got money from his box in the Commercial Safety Deposit; that Clusman met respondent at the Metropolitan Trust and Savings Bank, in Chicago, and gave him $2950 in cash and a note for $750 secured by mortgage, on which respondent obtained $500, and respondent agreed to furnish $50 to make up the amount of $3500, to be used if needed; that Clusman informed respondent that he wanted the title taken in the name of Robert Schrumpf, who would afterward convey it to Clusman's wife; that on account of this arrangement Clusman did not go to the sale, and after the sale respondent informed him that he had to bid $3500 to get the property; that Clusman did not see the master's deed or learn of the actual amount of the sale until February, 1906; that the deed of Schrumpf to Clusman's wife was not made or acknowledged until long after the time that it purported to be, and that as soon as Clusman learned the true state of affairs he demanded the return of the $750 note and the balance of cash over $2700.

The version of the affair given by the respondent before the master was, that he attended the sale and bid off the property for himself; that he had no understanding or agreement with Clusman that he was to bid for him; that he did not receive any money or note from Clusman for the purpose of bidding at the sale; that after the sale he informed Clusman that he had bought the property for $2700; that Clusman then said he would give him a bonus of $800 for it; that Clusman said he wanted the master's

deed made to Robert Schrumpf; that respondent then went to the master and had the name of Schrumpf substituted as purchaser; that Schrumpf signed and acknowledged the deed to Mary Clusman before the respondent, as notary public, on the same day of the sale but it was not delivered until after the master's deed was executed, and that said deed was delivered some weeks after the sale, when the master's deed had been received.

There are doubtless some mistakes and inaccuracies in the testimony of Dr. Clusman as to the details of the transaction, but he was corroborated as to all the substantial and material parts of it. He thought that respondent got $500 from the Metropolitan bank on the $750 note on the morning of the sale. This was denied by the respondent, and there was evidence that he sold the note to Lizzie Ebert on August 31, 1905. It is, of course, possible that the respondent did both of those things, but there can be no dispute of the fact that he deposited in his bank $2950 on July 26, 1905,—the day of the sale,—which deposit was shown by deposit slip and his own bank book. The record of the Commercial Safety Deposit Company shows that Clusman opened his box on the day of the sale between nine and ten o'clock in the morning, and there was evidence that he and respondent were seen going toward the Metropolitan Trust and Savings Bank on or near that day. The testimony of the master in chancery who made the sale is irreconcilable with that of respondent as to what occurred at the sale. The master testified that when the property was struck off he asked respondent for whom the bid was made, and respondent gave him the name of Robert Schrumpf, spelling it out, and saying that Schrumpf was his client. The record of the real estate board at the auction rooms where the sale was made showed that the sale was to Robert Schrumpf, so that the alleged change in the name of the purchaser is at least extremely improbable. Schrumpf, to whom the property was sold and the master's deed made,

testified that Clusman asked him early in July, 1905, if he might take some property in his name. Schrumpf was a single man and would be a convenient agency for transferring the title to Clusman's wife. Schrumpf also testified that he never met respondent until January, 1906, when he and Clusman met in respondent's office, and Clusman said that the respondent was his lawyer and was transacting his business in regard to the property. Schrumpf identified the deed made by him to Mary Clusman and denied that it was signed or acknowledged on the day it bore date or before January, 1906.

We regard the charge against respondent as proven and the master's conclusions as justified by the evidence. The exceptions to the master's report are overruled and the rule will be made absolute, and an order will be entered striking the name of the respondent from the roll of attorneys of this court.

*Rule made absolute.*